**Electronically Filed**
**Supreme Court**
**SCWC-15-0000402**
**16-MAY-2018**
**09:37 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

RACHEL VIAMOANA UI,
Petitioner/Defendant-Appellant.

SCWC-15-0000402

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000402; CASE NO. 3DTA-11-02996)

MAY 16, 2018

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

The right to have all elements of a charged criminal

offense proven beyond a reasonable doubt is one of the

fundamental principles of our justice system. In State v.

Murray, we held that a trial court must engage a defendant in an

on-the-record colloquy to ensure that the defendant is

intelligently, knowingly, and voluntarily relinquishing this

fundamental right before the court may accept the defendant's admission of an element of a crime. 116 Hawai'i 3, 12, 169 P.3d 955, 964 (2007). We now reiterate our holding in Murray and decline to establish an exception to the colloquy requirement when a stipulation is based on trial strategy or time constraints.

## I.    BACKGROUND

In April 2011, Rachel Viamoana Ui and Jacob Wong, Ui's co-worker, were involved in a traffic collision in Kona on the island of Hawai'i. The two were traveling in Wong's vehicle, which "rolled" after it collided with a concrete construction barrier on Kamakaeha Avenue, eventually coming to a stop on its roof. When an ambulance arrived, the responding emergency medical technician found Ui unconscious a few feet from the driver-side door of the vehicle. Ui was transported to Kona Hospital, where an emergency room physician informed the responding police officer that he smelled alcohol on her person. Acting pursuant to Hawaii Revised Statutes (HRS) § 291E-21 (Supp. 2006), the officer requested that the hospital obtain a blood sample from Ui in order to determine her blood alcohol content (BAC). Ronald Luga, a medical technician employed by the hospital, proceeded to draw two vials of blood from Ui while she remained unconscious.

## A.    District Court Proceedings

The State of Hawai'i filed a complaint in the District Court of the Third Circuit (district court) charging Ui with operating a vehicle under the influence of an intoxicant (OVUII) in violation of HRS § 291E-61(a) (Supp. 2011)[1] and driving without a license in violation of HRS § 286-102(b)[2] (2007).[3] Ui pleaded not guilty to both charges.

---

[1]    HRS § 291E-61 provides in relevant part as follows:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

   (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]

   . . .

   (4)    With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

[2]    HRS § 286-102(b) provides in relevant part as follows:

(b) A person operating the following category or combination of categories of motor vehicles shall be examined . . . and duly licensed by the examiner of drivers:

   . . .

   (3) Passenger cars of any gross vehicle weight rating, buses designed to transport fifteen or fewer occupants, and trucks and vans having a gross vehicle weight rating of fifteen thousand pounds or less . . . .

[3]    The complaint charged as follows:

Count 1 (C11009451/KN)

(continued . . .)

During the bench trial,[4] the parties offered conflicting testimony as to whether Ui was driving at the time of the accident. Ui and Wong both acknowledged that they drank heavily on the night in question and testified that Wong had driven the two to a local store prior to the collision. Wong claimed that Ui insisted upon driving his truck when they left the store and was in control of the vehicle when it collided with the concrete barrier. In contrast, Ui asserted that she had "passed out" in Wong's passenger seat while still at the store and was sleeping when the collision occurred.

---

(. . . continued)

> On or about the 13th day of April, 2011, in Kona, County and State of Hawai'i, RACHEL UI, did operate or assume actual physical control of a vehicle on any public way, street, road, or highway, while under the influence of alcohol in an amount sufficient to impair Defendant's normal mental faculties or ability to care for Defendant's self and guard against casualty; and/or with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E-61(a), Hawai'i Revised Statutes, as amended.
>
> Count 2
>
> On or about the 13th day of April, 2011, in Kona, County and State of Hawai'i, RACHEL UI, did operate a motor vehicle of a category listed in Section 286-102 of the Hawai'i Revised Statutes, without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles, thereby committing the offense of Driving Without a License, in violation of Section 286-102(b), Hawai'i Revised Statutes, as amended.

[4] The Honorable Joseph P. Florendo presided.

The State called Luga to testify regarding the blood draw he performed on Ui. Before Luga's testimony could begin, Ui's defense counsel interrupted:

> I was speaking with Ms. Ui, and we may be willing to stipulate to certain things to save time with these witnesses.
>
> Ms. Ui's asking me, was asking me if these witnesses are necessary, and I explained to her not if we're willing to stipulate to certain things. And I know that we're trying to get a lot done today. So if I could just briefly speak with her, and maybe the prosecution, about what we'd be willing to stipulate to, to save . . . the need of these witnesses.

[Tr 4/13/12, 43:67] The court granted a recess to allow defense counsel to confer with Ui and the prosecuting attorney.

Following the recess, defense counsel orally stipulated to the following: (1) Ui's blood was drawn within three hours of the report of the accident; (2) Ui's blood was drawn in accordance with the Hawaii Administrative Rules; and (3) the blood samples were properly secured and transported to the laboratory. Additionally, defense counsel stipulated that Ui's blood test results showed a BAC of 0.156 grams of alcohol per one hundred milliliters or cubic centimeters of blood. Defense counsel indicated that he had "reviewed those stipulations" with Ui and "we're not challenging any of those facts."

The district court did not engage Ui in a colloquy regarding the stipulation to the blood test results, and a written copy of the stipulation was not provided to the court.

Neither the court nor counsel acknowledged that the stipulated facts constituted proof of one of the two elements of a HRS § 291E-61(a)(4) offense.  See Hawai'i Standard Jury Instructions Criminal 16.05 (2004) (providing that the two elements of a violation are 1) operating a vehicle and 2) having 0.8 or more grams of alcohol per 100 milliliters or cubic centimeters of blood).

At the conclusion of evidence, the district court found Ui guilty of OVUII and of driving without a license.  The court sentenced Ui to pay a $1,000 fine and other monetary fees, attend a fourteen-hour driver's education course, and obtain a substance abuse assessment.

B.    **Proceedings Before the Intermediate Court of Appeals**

Approximately twenty-eight months later, Ui, represented by new counsel, filed a notice of appeal to the Intermediate Court of Appeals (ICA).[5]  Ui argued that the State had failed to allege in its initial complaint that she had acted with the state of mind required to commit both offenses.  With regard to the OVUII conviction, Ui argued it should be vacated

_____

[5]    Shortly after the appeal was filed, Ui filed a statement of jurisdiction that argued the untimeliness of her notice of appeal should be excused under State v. Caraballo, 62 Haw. 309, 316, 615 P.2d 91, 96 (1980), because Ui's court-appointed counsel had failed to take the procedural steps to effectuate Ui's expressed desire to appeal.  The State did not contest the timeliness of Ui's appeal to the ICA.

6

because the language of the district court's ruling left it unclear whether the conviction was premised on HRS § 291E-61(a)(1)--which includes a state of mind requirement not alleged in the complaint--or HRS § 291E-61(a)(4)--which does not.[6]

In a Summary Disposition Order (SDO), the ICA vacated Ui's conviction for driving without a license in violation of HRS § 286-102.[7] The ICA reasoned that, because HRS § 286-102 does not in itself specify a requisite state of mind with respect to the conduct it prohibits, HRS § 702-204 (2014)[8] requires that a defendant must have undertaken each element of the offense intentionally, knowingly, or recklessly in order to be convicted. The ICA held that, because the State had not alleged a mens rea in its complaint, dismissal of the driving without a license charge without prejudice was warranted under this court's decision in State v. Apollonio, 130 Hawai'i 353, 359, 311 P.3d 676, 682 (2013).

---

[6] An OVUII offense may be established either by proving a defendant drove while under the influence of an amount of alcohol sufficient to cause impairment under HRS § 291E-61(a)(1) or by proving a defendant drove with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood under HRS § 291E-61(a)(4). State v. Grindles, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989). The subsections are not separate offenses, but rather separate methods of proof for a single offense. Id.

[7] The ICA's SDO can be found at State v. Ui, No. CAAP-15-0000402, 2016 WL 3018301 (Haw. App. May 25, 2016).

[8] HRS § 702-204 provides in relevant part as follows: "When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."

The ICA also determined that Ui's OVUII conviction was based on violations of both HRS § 291E-61(a)(1) (impairment of ability to care for oneself) and HRS § 291E-61(a)(4) (BAC over .08). Because HRS § 291E-61(a)(4) is a strict liability method of proof that does not require the State to allege a mens rea under our precedents, see State v. Nesmith, 127 Hawaiʻi 48, 58-61, 276 P.3d 617, 627-30 (2012), the ICA affirmed Ui's OVUII conviction under HRS § 291E-61(a)(4).

Following issuance of the SDO, Ui filed a motion for reconsideration. Ui argued that this court's then-recent decision in State v. Won, 137 Hawaiʻi 330, 372 P.3d 1065 (2015), in which we held that the State may not use the threat of criminal sanctions to coerce a driver into consenting to a breath or blood test, rendered her blood test results inadmissible.[9] The ICA should therefore vacate her HRS § 291E-61(a)(4) conviction, Ui contended, and remand the case to permit her to move to suppress the blood test results. The ICA denied the motion, determining that Ui had waived the issue of admissibility by failing to move for suppression of the test results prior to trial.

_____

[9] Ui initially raised Won's applicability to her case in a motion for leave to file supplemental briefing prior to the ICA's SDO. The ICA denied Ui's motion.

## II.   STANDARDS OF REVIEW

Both the reasonableness of a search and the validity of a defendant's waiver of his or her constitutional rights are questions of constitutional law.  See State v. Quiday, 141 Hawaiʻi 116, 121, 405 P.3d 552, 557 (2017); State v. Friedman, 93 Hawaiʻi 63, 67, 996 P.2d 268, 272 (2000).  "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  Friedman, 93 Hawaiʻi at 67, 996 P.2d at 272 (quoting State v. Hanapi, 89 Hawaiʻi 177, 182, 970 P.2d 485, 490 (1998)).

## III. DISCUSSION

In her application for a writ of certiorari, Ui contends that the ICA erred in failing to apply State v. Won, 137 Hawaiʻi 330, 372 P.3d 1065 (2015), to vacate her HRS § 291E-61(a)(4) conviction.  The State responds that the ICA correctly held that Ui is not similarly situated to the defendant in Won.[10]

---

[10]    The State also argues for the first time in response to Ui's certiorari application that the ICA lacked jurisdiction because Ui's appeal was untimely.  Ui expressed her intention to appeal during sentencing , and Ui's appointed trial counsel was aware of that intention, as evidenced by counsel's filing of an ex parte motion to extend the time to file a notice of appeal.  The record does not indicate that Ui's trial counsel filed a motion to withdraw.  Due process dictates that a defendant may not be deprived of an appeal because appointed counsel failed to comply with procedural rules.  State v. Knight, 80 Hawaiʻi 318, 323-24, 909 P.2d 1133, 1138-39 (1996); see also Maddox v. State, 141 Hawaiʻi 196, 204-05, 407 P.3d 152, 160-61 (2017) (holding that trial counsel is constitutionally ineffective when counsel is

(continued . . .)

Additionally, this court directed the parties to submit supplemental briefing on the following questions: (1) whether the district court erred by failing to engage Ui in a colloquy regarding the blood test stipulation as required by State v. Murray, 116 Hawai'i 3, 12, 169 P.3d 955, 964 (2007), and (2) whether, if the district court erred by not engaging Ui in a colloquy, this court should recognize plain error and vacate Ui's conviction.

### A. State v. Won Is Inapplicable To Ui's Blood Draw.

In Won, we held that law enforcement's use of an "implied consent form" that threatened criminal penalties for refusing a BAC test was inherently coercive and rendered a driver's ensuing consent invalid under article I, section 7 of the Hawai'i Constitution. 137 Hawai'i at 347-48, 372 P.3d at 1082-83. When Ui's blood was drawn at Kona Community Hospital after the accident, no request was made that she consent to testing, nor was an implied consent form advising of possible criminal penalties involved. Because Ui's blood draw was not predicated on her consent, Won does not provide authority to challenge Ui's HRS § 291E-61(a)(4) conviction on this basis.

---

(. . . continued)

aware of a defendant's desire to appeal and fails to take the procedural steps to effectuate or protect the defendant's right to appeal).

See id. at 344 n.26, 372 P.3d at 1079 n.26 (citing State v.

Entrekin, 98 Hawai'i 221, 232, 47 P.3d 336, 347 (2002)) (setting

forth constitutional requirements for a nonconsensual,

warrantless blood extraction pursuant to HRS § 291E-21).[11]

### B.   State v. Murray Required An On-the-Record Colloquy.

### 1.   A Colloquy is Required Prior to Any Stipulation to an Element of an Offense

It is well settled in Hawai'i law that a defendant

relinquishes fundamental rights only when a waiver is undertaken

intelligently, knowingly, and voluntarily.  Murray, 116 Hawai'i

at 10-11, 169 P.3d at 962-63 (citing State v. Ibuos, 75 Haw.

118, 121, 857 P.2d 576, 578 (1993); Tachibana v. State, 79

Hawai'i 226, 235, 900 P.2d 1293, 1302 (1995)).  Reviewing courts

will not presume a defendant's acquiescence in the loss of

fundamental rights on the basis of a silent record.  Wong v.

Among, 52 Haw. 420, 424, 477 P.2d 630, 633-34 (1970).  Rather,

an affirmative, on-the-record waiver must come directly from the

defendant, and counsel may not waive fundamental rights on a

client's behalf.  Murray, 116 Hawai'i at 10, 169 P.3d at 962.

---

[11]    We express no opinion as to the applicability of Birchfield v. North Dakota to this case.  136 S. Ct. 2160 (2016).  On retrial, the district court may consider whether Ui's blood draw was performed pursuant to exigent circumstances or solely as an incident to her arrest.

To ensure these requirements are met, it is necessary for a trial court to engage a defendant in an on-the-record colloquy before accepting a waiver of any of the rights we have held to be fundamental, including the right to counsel, Carvalho v. Olim, 55 Haw. 336, 342-43, 519 P.2d 892, 897 (1974), the right to trial by jury, Ibuos, 75 Haw. at 121, 857 P.2d at 578, and the right of a defendant to testify on his or her own behalf, Tachibana, 79 Hawai'i at 236, 900 P.2d at 1303.

In Murray, this court considered whether the on-the-record colloquy requirement should be applied to a defendant's stipulation to an element of an offense. 116 Hawai'i at 9, 169 P.3d at 961. Murray was charged with abuse of family or household members under HRS § 709-906 (Supp. 2006) with a statutory felony enhancement based on two previous convictions for the same offense within a specified period.[12] Id. at 5-6, 169 P.3d at 957-58. Prior to trial, Murray's counsel stipulated that Murray had been convicted under the statute twice within

_____

[12] In relevant part, HRS § 709-906 states as follows:

> (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4).
>
> . . .
>
> (7) For a third or any subsequent offense that occurs within two years of a second or subsequent conviction, the offense shall be a class C felony.

the required time frame, thus satisfying an element of the offense.  Id. at 5, 169 P.3d at 957.  The trial court did not address Murray in a colloquy regarding the constitutional rights he was waiving by stipulating to his prior convictions.  Id.

On review, this court held that the right to have all elements proven beyond a reasonable doubt is a fundamental right guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution; article I, section 5 of the Hawai'i Constitution; and HRS § 701-114 (1993).[13]  Id. at 10-12, 169 P.3d at 962-64.  We determined that "a colloquy between the trial court and defendant is the best way to ensure that a defendant's constitutional right . . . is protected" because it guarantees that a defendant understands the nature of the fundamental rights being relinquished, the full consequences of such a

---

[13] HRS § 701-114 states the following:

(1) Except as otherwise provided in section 701-115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:

(a) Each element of the offense;

(b) The state of mind required to establish each element of the offense;

(c) Facts establishing jurisdiction;

(d) Facts establishing venue; and

(e) Facts establishing that the offense was committed within the time period specified in section 701-108.

(2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.

waiver, and the defendant's unrestricted personal discretion as to whether to undertake the waiver.[14]  Id. at 12, 169 P.3d at 964.

Thus, we determined that a colloquy is the most reliable procedure to ensure the defendant's waiver is knowing, intelligent, and voluntary.  Id.  We reasoned in Murray that "the colloquy approach also best promotes judicial efficiency by establishing on the record that the defendant has voluntarily waived an element of the offense," thus minimizing post-trial challenges.  Id.  We therefore held that the trial court must conduct a colloquy when a defendant wishes to waive the right to have all elements of an offense proven beyond a reasonable doubt, which occurs when a defendant stipulates to one or more elements.  Id.

The requirement that all elements of an offense be proven beyond a reasonable doubt arises out of the presumption of innocence, one of the fundamental principles that establish the foundation of our justice system.  Coffin v. U.S., 156 U.S. 432, 452-61 (1895); see also State v. Basham, 132 Hawaiʻi 97, 116, 319 P.3d 1105, 1124 (2014).  No defendant in this State may

---

[14]     To the extent the State argues Murray established a colloquy requirement only for stipulations regarding past convictions, it is mistaken.  See Murray, 116 Hawaiʻi at 12, 169 P.3d at 964 ("[T]he trial court must conduct a colloquy regarding waiver of proof of an element of the offense.").

be found guilty until the prosecution overcomes the defendant's presumption of innocence as to each element of the charged offense.  State v. Lima, 64 Haw. 470, 474, 643 P.2d 536, 539 (1982); HRS § 701-114.

The waiver of the constitutional right to have each element of an offense proven beyond a reasonable doubt is not an insignificant or routine procedural matter.  By its very nature, the right encompasses a number of other constitutional rights, including the right to confront and cross-examine witnesses as to the stipulated element and the right to adduce contrary evidence regarding the stipulated element.  83 C.J.S. Stipulations § 5 (2017) ("A stipulation bars a party who enters into it from adducing evidence to dispute the stipulated facts or the circumstances surrounding them.").  The stipulation also acts as a waiver of any potential defenses to the element, both at trial and on appeal.  Id. § 78 ("A stipulation as to facts also functions as a waiver of legal defenses to the establishment of the particular element to which the parties have stipulated, and therefore is not reviewable on appeal."). In the absence of a colloquy, there is little by which a court can gauge whether a defendant understands that stipulating to facts comprising an element of an offense amounts to such a sweeping concession.

In short, the right to have all elements of an offense proven beyond a reasonable doubt is of fundamental importance. We accordingly reaffirm that an on-the-record colloquy is required to protect against the wrongful denial of this right.

### 2. Trial Strategy is not an Exception to the Mandatory Colloquy Required by State v. Murray

The State argues that there were tactical advantages to the stipulation and consequently a Murray colloquy was not required to be conducted by the trial court. Our precedents place certain tactical decisions within the discretion of defense counsel after consultation with a defendant to the extent feasible and appropriate. See State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (citing American Bar Association, Standards for Criminal Justice—Prosecution Function and Defense Function, Standard 4-5.2 (3d ed. 1993)). Our decision in Murray, however, makes clear that the final decision to stipulate to evidence proving an element of an offense resides solely with the defendant. 116 Hawai'i at 12, 169 P.3d at 964. Indeed, the Murray court held that the ICA had gravely erred by concluding the stipulation was "a tactical decision permissibly made by counsel for the defendant." Id. at 7, 13, 169 P.3d at 959, 965. In reviewing applicable precedent, we noted expressly that "a defendant's constitutional rights may not be waived by counsel . . . as a tactical matter." Id. at

16

11, 169 P.3d at 963 (citing Tachibana v. State, 79 Hawai'i 226, 229, 232, 900 P.2d 1293, 1296, 1299 (1995)).

Creating a trial strategy exception to the requirement that a court engage a defendant in a colloquy prior to accepting a stipulation to an element of an offense would be a sharp deviation from the procedure for waiving other fundamental rights. An attorney may not, for example, waive a defendant's right to a jury trial when the attorney considers a bench trial strategically advantageous. State v. Ibuos, 75 Haw. 118, 121, 857 P.2d 576, 578 (1993); see also State v. Young, 73 Haw. 217, 221, 830 P.2d 512, 515 (1992) (overruling State v. Olivera, 53 Haw. 551, 497 P.2d 1360 (1972), which held that counsel may waive a jury trial on a client's behalf). Nor may defense counsel waive a defendant's right to testify as a matter of trial strategy. Tachibana, 79 Hawai'i at 232, 900 P.2d at 1299 (holding that defense counsel may not waive a defendant's right to testify in his or her own behalf for tactical reasons).

A trial strategy exception would also ultimately swallow the colloquy rule. Stipulations by definition are voluntary agreements between opposing parties. Stipulation, Black's Law Dictionary (10th ed. 2014). As a voluntary agreement, there is little incentive for counsel to enter into a stipulation unless it is viewed as beneficial in some fashion.

This is to say that every decision to stipulate to evidence in a case may be considered within the bounds of the trial strategy exception argued by the State. See Gonzalez v. United States, 553 U.S. 242, 256 (2008) (Scalia, J., concurring in the judgment) ("Depending on the circumstances, waiving any right can be a tactical decision.").

Even assuming that stipulations that involve trial strategy can be distinguished from those that do not, it is unclear what this distinction is and how a court would make the determination. The evaluation would invariably need to be made by the trial court because whether a particular stipulation is strategic is a fact-laden determination. In assessing whether a colloquy is required, a trial court would need to inquire of counsel whether the stipulation was based on strategy or some other consideration. The response by defense counsel to this question in itself poses a risk of invading the attorney-client privilege and may also be potentially damaging to the defense. The follow-up questions necessary to determine the accuracy of a counsel's assessment would compound and heighten these concerns.

The present case amply demonstrates that reviewing courts are not well positioned to ascertain the reasons underlying a stipulation when such a judicial inquiry does not take place at the trial level. Ui's counsel stated the stipulation was intended simply to "save time" because they were

"trying to get a lot done today." Despite this indication that the stipulation was driven by administrative time constraints, the State argues that Ui "had clear strategic and tactical reasons for stipulating to the blood alcohol results." As would likely be true in any appellate case in which judicial inquiry was not done at the trial level, an accurate evaluation of the issue would require remand for a hearing at which counsel and the defendant would have to testify or respond to inquiries regarding potentially privileged communications.[15] And, as the State appears to concede [SB at 9], remand for an evidentiary hearing may be required even when its proposed trial strategy exception to the colloquy requirement would apply because the strategic advantages of a stipulation are only one aspect to be considered in evaluating whether a defendant's waiver was knowing, intelligent, and voluntary under the totality of the circumstances. Thus, the cost to judicial resources of determining whether a colloquy was excused under a trial strategy exception would negate the efficiency benefits the

---

[15] Indeed, our own precedents also evidence the difficulty inherent in distinguishing strategic stipulations from those undertaken solely for administrative convenience. See State v. Pratt, 127 Hawai'i 206, 225 n.6, 277 P.3d 300, 319 n.6 (2012) (Acoba, J., dissenting) (disputing the majority's characterization of a stipulation as tactical, stating "it would not appear this strategy had an obvious basis for benefitting Petitioner's case" (brackets and quotations omitted)).

colloquy requirement affords.  See Murray, 116 Hawai'i at 12, 169 P.3d at 964.

Further, the stipulation in Murray itself was clearly a strategic decision that would fall squarely within the State's argued exception.  By relinquishing the right to have his prior convictions proven beyond a reasonable doubt, Murray avoided "the prejudice that would result from relating the details of the previous incidents to the jury."  116 Hawai'i at 20, 169 P.3d at 972.  Murray's decision represented a determination that it was advantageous for him to concede one element of the charged offense and focus his trial efforts on disproving those elements that remained.  Despite the clear strategic analysis inherent in his decision, we held that the "stipulation [could] be accepted only after engaging [Murray] in an on-the-record colloquy regarding [his] constitutional rights, and ensuring that [Murray made] a knowing and voluntary waiver of his right to have the prior convictions proven beyond a reasonable doubt and decided by a jury."  Id. at 21, 169 P.3d at 973.  The State's argued trial strategy exception would thus constitute a sub silentio reversal of our holding in Murray.

In sum, establishing a trial strategy exception to the Murray colloquy requirement would fatally undermine the procedural safeguards we have created for defendants'

fundamental rights.  It would also introduce administrative difficulties that would undercut the benefits to judicial economy granted by the colloquy requirement.  See Murray, 116 Hawai'i at 12, 169 P.3d at 964.  And it would represent an effective overruling of Murray and other cases in which we have held that a knowing, intelligent, and voluntary waiver cannot be assumed from counsel's words and actions, regardless of strategic reasons for counsel's statement of waiver.  E.g., Tachibana, 79 Hawai'i at 232, 900 P.2d at 1299; Young, 73 Haw. at 221, 830 P.2d at 515.  We therefore decline to adopt such an exception.

### 3.   The Trial Court Failed to Engage Ui in an On-the-Record Colloquy

During the State's case-in-chief, the district court recessed to allow the parties to discuss a possible stipulation. Following the recess, counsel proceeded to orally stipulate to the evidentiary foundation and results of Ui's blood test.  The court did not address Ui before the stipulation was read to, and accepted by, the district court.  The district court did not attempt to determine whether Ui understood the nature of the rights she was waiving and the consequences of that waiver, nor did it ascertain whether the waiver was the product of Ui's unrestrained choice.

As stated, Murray requires a trial court to conduct an on-the-record colloquy with the defendant before accepting a waiver of the fundamental right to have all elements of a charge proven beyond a reasonable doubt. 116 Hawai‘i at 12, 169 P.3d at 964. Only when the court has ensured that the right has been knowingly, intelligently, and voluntarily waived may it accept a stipulation to an element of an offense. Id. No such colloquy occurred here. Indeed, the present case underscores the vital role played by the colloquy. There is no indication in the record that Ui understood that the stipulated facts her counsel agreed to had the effect of conclusively establishing one of the two elements of an offense with which she was charged. The district court therefore erred in accepting Ui's stipulation.

**C.    The District Court's Plain Error Warrants Reversal.**

When necessary to serve the ends of justice, this court will consider issues that have not been preserved below or raised on appeal. See State v. Kahalewai, 56 Haw. 481, 491, 541 P.2d 1020, 1027 (1975); Hawai‘i Rules of Penal Procedure (HRPP) Rule 52(b) (2016) (allowing plain error to be noticed although not brought to attention of trial court); Hawai‘i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (2010) (permitting point of error not presented on appeal to be noticed as plain error); HRAP Rule 40.1(d)(1) (2015) (allowing question not

raised to be noticed as plain error).  It is "firmly

established" that the relevant inquiry when evaluating whether a

trial court's plain error may be noticed is whether the error

affected substantial rights.[16]  State v. Miller, 122 Hawai'i 92,

100, 223 P.3d 157, 165 (2010); see also HRPP Rule 52(b) ("Plain

error.  Plain errors or defects affecting substantial rights may

be noticed although they were not brought to the attention of

the court.").  Thus, a reviewing court has discretion to correct

plain error when the error is "not harmless beyond a reasonable

doubt."[17]  State v. Nichols, 111 Hawai'i 327, 335, 141 P.3d 974,

982 (2006); see also Miller, 122 Hawai'i at 130, 223 P.3d at 195;

HRPP Rule 52(a) (2016) ("Harmless error.  Any error, defect,

---

[16]    The State's supplemental brief analyzed this case under the
federal plain error standard set forth in United States v. Olano, 507 U.S.
725 (1993).  However, as the State concedes, this court expressly declined to
adopt the four-pronged Olano standard in State v. Nichols, 111 Hawai'i 327,
335, 141 P.3d 974, 982 (2006).  We reaffirm our holding in Nichols and do not
address the State's arguments that rely on Olano.

[17]    The State appears to suggest that a different standard for
measuring harmless error should apply here because the failure of the
district court to engage Ui in a Murray colloquy was not "constitutional
error per se."  "Because a defendant may not be convicted of an offense
except upon proof establishing his or her guilt beyond a reasonable doubt, we
question whether a standard more lenient than the harmless beyond a
reasonable doubt standard is ever appropriate in criminal cases."  State v.
Malufau, 80 Hawai'i 126, 131, 906 P.2d 612, 617, order on reconsideration
(1995); see also State v. Holbron, 80 Hawai'i 27, 32 n.12, 904 P.2d 912, 917
n.12 (1995) ("To the extent that this language . . . implies a standard of
review under HRPP 52(a) other than 'harmless beyond a reasonable doubt,' we
expressly disapprove and overrule it."); State v. Chun, 93 Hawai'i 389, 393, 4
P.3d 523, 527 (App. 2000) (holding all errors in criminal cases are subject
to harmless beyond a reasonable doubt standard).  Our precedent rejects the
distinction asserted by the State of "constitutional error per se" versus
non-constitutional errors.

23

irregularity or variance which does not affect substantial rights shall be disregarded.").

The right to have all elements of a charged offense proven beyond a reasonable doubt is rooted not only in statutory and constitutional law, but also in the presumption of innocence that is the very foundation of our criminal justice system. We held in Murray that the right was of such fundamental importance that an on-the-record colloquy is required to protect against its wrongful deprivation. 116 Hawai'i at 10, 12, 169 P.3d at 962, 964 (citing U.S. Const. amend. XIV; Haw. Const. art. I, § 5). By not engaging Ui in this colloquy, the district court may have deprived Ui of the fundamental right that the colloquy was designed to protect. The error thus potentially affected rights that were not only substantial, but also fundamental.

In assessing whether an error is harmless beyond a reasonable doubt, we must determine whether there is a reasonable possibility that the error contributed to the conviction. State v. Nofoa, 135 Hawai'i 220, 229, 349 P.3d 327, 336 (2015). If there is a reasonable possibility that the error contributed to the conviction, "the error is not harmless beyond a reasonable doubt, and the conviction must be set aside." Id. (citing State v. Gano, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999)).

The State contends that the stipulation did not affect the outcome of the trial since both Wong and Ui testified as to Ui's level of intoxication. Although Ui and Wong's testimony did reflect the number and type of alcoholic beverages that Ui consumed, there is nothing in the record indicating Ui's height or weight or the anticipated rate of alcohol dissipation for a person with Ui's physical attributes. In the absence of such information, there is nothing from which a reasonable trier of fact could infer Ui's numerical blood alcohol concentration at the time of the accident other than the stipulation.[18] See State v. Nakamitsu, No. CAAP-14-0001151, 2016 WL 381475, at *13 (Haw. App. Jan. 29, 2016), aff'd, 140 Hawai'i 157 (2017) (holding that, without test results, insufficient evidence existed to support defendant's conviction for driving with breath alcohol content over the legal limit despite ample evidence of defendant's impairment, including testimony that defendant crashed into

---

[18]    Because the State did not allege in its initial complaint the requisite mens rea for the OVUII charge based on Ui's impairment under HRS § 291E-61(a)(1), Ui's OVUII conviction could be based only on a violation of HRS § 291E-61(a)(4), which requires a showing that Ui's BAC was over the specified limit. See State v. Apollonio, 130 Hawai'i 353, 359, 311 P.3d 676, 682 (2013) ("A charge that fails to charge a requisite state of mind cannot be construed reasonably to state an offense and thus the charge is dismissed without prejudice because it violates due process." (citing State v. Elliott, 77 Hawai'i 309, 313, 884 P.2d 372, 376 (1994))); State v. Nesmith, 127 Hawai'i 48, 58-61, 276 P.3d 617, 627-30 (2012) (holding that HRS § 291E-61(a)(1) includes a requisite mens rea element while HRS § 291E-61(a)(4) is a strict liability method of proof). Thus, contrary to the State's contention, an alternative manner to prove guilt in this case was not available, and the stipulation was necessary to prove Ui's conviction.

light pole, had red eyes and smelled of alcohol, failed field sobriety tests, and stumbled and acted erratically by crying and using profanity).

Because the erroneously admitted stipulation formed the only basis from which a trier of fact could infer Ui's numerical BAC, we cannot conclude that the district court's error in accepting the stipulation did not contribute to Ui's OVUII conviction.  Accordingly, we hold that the district court's error was not harmless beyond a reasonable doubt.

In choosing to invoke our discretionary review of plain errors, we consider whether the record evinces "errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings."  Miller, 122 Hawai'i at 100, 223 P.3d at 165 (emphasis omitted) (quoting State v. Sawyer, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)).  We will correct such errors "to prevent the denial of fundamental rights"-- regardless of whether the error was brought to the attention of the trial judge or raised on appeal.[19]  Id. (quoting Sawyer, 88 Hawai'i at 330, 966 P.2d at 642).

---

[19]    The dissent argues that the power to correct plain error should be exercised "sparingly" and that sua sponte review should be invoked only in "exceptional cases," relying on language in State v. Kelekolio, 74 Haw. 479, 515, 849 P.2d 58, 74-75 (1993), and State v. Fox, 70 Haw. 46, 56, 760 P.2d 670, 675-76 (1988).  Dissent at 7.  This court expressly rejected an "exceptional cases" standard in Miller, in which we clarified that "the term 'sparingly' refers to the limitation already in place in HRPP Rule 52(b) that

(continued . . .)

As stated, the right to have all elements of an offense proven beyond a reasonable doubt is rooted in structural principles underlying criminal justice.  The potential wrongful denial of the presumption of innocence casts doubt upon the integrity of the system as a whole.  In light of this foundational importance, invoking plain error review is appropriate under these circumstances.  See State v. Staley, 91 Hawai'i 275, 286-87, 982 P.2d 904, 915-16 (1999) (holding it was plain error for trial court to fail to engage defendant in a colloquy prior to accepting defendant's waiver of fundamental right to testify); State v. Davia, 87 Hawai'i 249, 255, 953 P.2d 1347, 1353 (1998) (holding it was plain error for trial court to fail to engage defendant in a colloquy prior to accepting defendant's no contest plea); Miller, 122 Hawai'i at 116, 223 P.3d at 181 (holding plain error review is appropriate when errors affect the fairness, integrity, or public perception of judicial proceedings (citing State v. Fox, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988))).

---

(. . . continued)

the error must be one 'affecting substantial rights.'"  122 Hawai'i at 117, 223 P.3d at 182.  We reaffirm Miller's holding that "where plain error has been committed and substantial rights have been affected thereby, the better part of discretion is to invoke the plain error rule."  Id. (quotations and brackets omitted).

The State and the dissent contend that State v. Pratt, 127 Hawaiʻi 206, 277 P.3d 300 (2012), forecloses plain error review under the circumstances of this case.  Dissent at 9-11.  However, we held in Pratt that it was not plain error for a court to fail to engage a defendant in a Murray colloquy when the trial had occurred before this court had decided Murray and established the colloquy requirement.  127 Hawaiʻi at 212, 277 P.3d at 306.  In contrast, the present case centers on a trial court's failure to implement clearly established law.

The dissent interprets Pratt to suggest that plain error review of a trial court's failure to conduct a Murray colloquy is inappropriate when counsel's statements suggest the defendant initiated or participated in the decision to stipulate to an element of the offense.  Dissent at 9-11.  This approach is misframed as a plain error standard, and it amounts to inferring the voluntariness and knowingness of a defendant's waiver of fundamental rights from the statements of defense counsel.  Respectfully, such a rule is plainly inconsistent with our precedents.

This court has often stated expressly that the "[w]aiver of a defendant's fundamental rights . . . must come directly from the defendant."  Murray, 116 Hawaiʻi at 10, 169 P.3d at 962 (emphasis added); accord State v. Ibuos, 75 Haw.

28

118, 121, 857 P.2d 576, 578 (1993). A waiver by defense counsel on the defendant's behalf is insufficient. State v. Young, 73 Haw. 217, 221, 830 P.2d 512, 514 (1992) ("[I]t is the defendant who must make the waiver, upon being well informed of his right to trial by jury." (emphasis added)); accord Ibuos, 75 Haw. at 120 n.1, 857 P.2d at 577 n.1; State v. Gomez-Lobato, 130 Hawai'i 465, 481, 312 P.3d 897, 913 (2013) (Acoba, J., concurring). Indeed, we have expressly refused to speculate regarding the substance of privileged communications surrounding a waiver, as the dissent would have us do here, stating that "a court may not rely upon an off-the-record discussion between counsel and a defendant to establish a valid waiver of a constitutional right." State v. Eduwensuyi, 141 Hawai'i 328, 336, 409 P.3d 732, 740 (2018).

We have even declined to find a knowing, intelligent, and voluntary waiver of fundamental rights when the defendant personally signs a written form or the court engages the defendant in an incomplete or deficient colloquy--neither of which occurred in this case. See, e.g., id.; State v. Baker, 132 Hawai'i 1, 7, 319 P.3d 1009, 1015 (2014); Gomez-Lobato, 130 Hawai'i at 472-73, 312 P.3d at 904-05. And we have often invoked plain error review in doing so. See, e.g., State v. Ichimura, SCWC-13-0000396, 2017 WL 2590858, at *7 (Haw. June 15, 2017);

Gomez-Lobato, 130 Hawai'i at 469 n.4, 312 P.3d at 901 n.4.; see also State v. Vaitogi, 59 Haw. 592, 593 n.4, 594, 585 P.2d 1259, 1260 n.4, 1261 (1978) (holding it was plain error for the trial court to fail to engage the defendant in an on-the-record colloquy prior to accepting a guilty plea).

Our precedents do not permit a reviewing court to infer that a fundamental right was knowingly, voluntarily, and intelligently relinquished by a defendant simply because defense counsel suggested that the right was so waived. Given the complete lack of an on-the-record colloquy and personal waiver in this case, we conclude that the trial court plainly erred.

## IV.  CONCLUSION

We hold that the district court plainly erred in failing to conduct an on-the-record colloquy as required by our decision in Murray. Thus, the court also erred in accepting the stipulation as evidence proving that Ui's BAC was .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood. The district court's error was not harmless, and the stipulation regarding Ui's blood test must be set aside. Accordingly, the ICA's June 30, 2016 Judgment on Appeal is affirmed in part and vacated in part. We affirm the ICA's Judgment on Appeal to the extent that it vacated Ui's conviction under HRS § 286-102(b) and remanded to the district

court with instructions to dismiss the HRS § 286-102(b) charge without prejudice.  We vacate the ICA's Judgment on Appeal to the extent that it affirmed Ui's conviction under HRS § 291E-61(a)(4) and also vacate Ui's district court conviction for this offense, and the case is remanded to the district court for further proceedings.

Steven T. Barta
for petitioner

David Blancett-Maddock
for respondent

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

