**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000636
19-SEP-2023
08:02 AM
Dkt. 62 MO**

NO. CAAP-22-0000636

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF THE P CHILDREN

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-S NO. 19-1-0083 AND FC-S NO. 19-1-0084)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Respondent-Appellant Mother (**Mother**), appeals from orders entered on September 26, 2022, revoking foster custody and granting permanent custody of FP and AP (collectively **Children**) to Petitioner-Appellee Department of Human Services (**DHS**) in the Family Court of the Second Circuit (**Family Court**) in FC-S Nos. 19-1-0083 and FC-S 19-1-0084, respectively (**TPR Orders**).[1] [2]

Mother raises two points of error asserting the Family Court erred by: (1) appointing a guardian ad litem who had previously represented Mother in a prior Child Protective Services (**CPS**) matter, and (2) failing to appoint new counsel for Mother after granting her court-appointed counsel's post-trial motion to withdraw.

---

[1]  The Honorable Michelle Drewyer presided.

[2]  The Children's father (**Father**) did not appeal the TPR Orders.

On June 13, 2023, this court issued an order referencing holdings by the Hawaiʻi Supreme Court in In re L.I., 149 Hawaiʻi 118, 482 P.3d 1079 (2021), and ordered the parties to submit supplemental briefing as to "whether appointment of counsel for Mother was timely."

Based on the record and pursuant to requirements under prevailing case law, we vacate orders affecting custody of the Children from June 21, 2019, when the Family Court first ordered temporary foster custody without appointing counsel for Mother in this case.  We remand to the Family Court for further proceedings.

## I. Background

FP was born in May 2017 and AP was born in April 2019.

On June 6, 2019, DHS filed a Petition for Family Supervision (**Petition for Supervision**) due to Mother's drug abuse impairing her ability to safely care for the Children.  That day, DHS also filed a safe family home report, identifying safety factors as "Mother's history of substance abuse, and family is transient."

On June 8, 2019, DHS personally served Mother with the Petition for Supervision.

On June 21, 2019, the Family Court held a return hearing on the Petition for Supervision wherein DHS moved for, and the Family Court granted, DHS's oral motion for temporary foster custody of the Children upon location.  Mother did not appear at the hearing and the Family Court stayed default against her.

On July 2, 2019, Mother appeared and the Family Court ordered her to return on July 16, 2019 with counsel.[3]

---

[3]  The hearing minutes do not reflect what, if any, advisement Mother received regarding the availability of court-appointed counsel. Additionally, the record does not contain a transcript of the July 2, 2019 hearing.  Thus, it is unclear what, if any, advisement Mother received regarding the availability of court-appointed counsel.

On July 16, 2019, Mother failed to appear, thus the Family Court entered an order establishing jurisdiction and granting DHS foster custody of the Children.

On November 12, 2019, Mother applied for and received court-appointed counsel.  This occurred 159 days (over 5 months) after DHS filed its Petition for Supervision, and 144 days (over 4 months) after the Family Court granted DHS temporary foster custody of the Children.

The underlying cases proceeded, and on September 26, 2022, the Family Court entered the TPR Orders.

## II. Discussion

"[T]he appellate court, at its option, may notice a plain error not presented."  HRAP Rule 28(b)(4).[4]  Further, "[w]e answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  State v. Ui, 142 Hawaiʻi 287, 292, 418 P.3d 628, 633 (2018) (citation omitted).

The Hawaiʻi Supreme Court, in In re T.M., held that:

> We recognize that parents have a substantive liberty interest in the care, custody, and control of their children that is protected by the due process clause of article I, section 5 of the Hawaiʻi Constitution.  Therefore, we additionally hold that parents have a constitutional right to counsel under article I, section 5 in parental termination proceedings and that from and after the filing date of this opinion, courts must appoint counsel for indigent parents once DHS files a petition to assert foster custody over a child.

131 Hawaiʻi 419, 421, 319 P.3d 338, 340 (2014) (emphasis added) (citation and footnote omitted).

Subsequently, in In re L.I., the Hawaiʻi Supreme Court further clarified:

---

[4]  HRAP Rule 28(b)(4) also states: "If an appellate court, when acting on a case on appeal, contemplates basing the disposition of the case wholly or in part upon an issue of plain error not raised by the parties through briefing, it shall not affirm, reverse, or vacate the case without allowing the parties the opportunity to brief the potential plain-error issue prior to disposition."  In this appeal, we issued an order for supplemental briefing on the plain error issue we address herein.

> We now take this opportunity to clarify that <u>In re T.M.</u> mandated that family courts appoint counsel for indigent parents when DHS files a petition asserting custody over a child. <u>We now further hold that family courts must appoint counsel for indigent parents when DHS files a petition for family supervision</u> because, at that point, parental rights are substantially affected as foster custody can be ordered by the court at a subsequent hearing.
>
> . . . .
>
> The failure to timely appoint counsel is <u>structural error which</u> . . . <u>requires vacatur without the necessity of proving harmful error</u>. The family court's failure to appoint Mother counsel when DHS filed its petition for family supervision was structural error and cannot be deemed harmless.

149 Hawaiʻi 118, 122-23, 482 P.3d 1079, 1083-84 (2021) (emphasis added) (citations and footnotes omitted).[5]  Thus, the supreme court in <u>In re L.I.</u> held that this court had erred by failing to vacate the family court's orders granting foster custody to DHS and terminating parental rights in that case.  <u>Id.</u> at 123, 482 P.3d at 1084.

In this appeal, we notice plain error based on the prevailing case law and conclude that counsel for Mother was not appointed in a timely manner.  Initially, we note that <u>In re T.M.</u> was issued in January 2014, prior to the initiation of this case in June 2019.  Thus, the rulings in <u>In re T.M.</u> applied at the beginning of the proceedings in this case.  However, <u>In re L.I.</u> was issued in March 2021, and thus the ruling therein extending

---

[5]  In <u>Interest of JH</u>, 152 Hawaiʻi 373, 526 P.3d 350 (2023), the Hawaiʻi Supreme Court subsequently distinguished <u>In re L.I.</u> and held:

> A family court must timely appoint counsel in parental rights cases.  Otherwise, structural error will nullify an outcome adverse to a parent.  <u>But the appointment, discharge, and reappointment of counsel is different</u>.
>
> We hold that if the family court appoints counsel at the onset of a parental rights case, and later there's a break in representation due to a parent's voluntary absence, then there is no structural error.  As long as a fundamentally fair procedure ensues and due process is satisfied, the family court's decision will stand.

<u>Id.</u> at 376, 526 P.3d at 353 (emphasis added).  In the instant case, we address the failure to timely appoint counsel for Mother at the initial stage, when DHS first asserted custody over the Children, and thus <u>Interest of JH</u> does not apply.

In re T.M. to the filing of a "petition for family supervision" was issued after the Petition for Supervision was filed in this case.  We thus hold that, under In re T.M., the Family Court in this case failed to appoint counsel upon DHS's oral motion for temporary custody made at the June 21, 2019 hearing.[6]

In reaching this holding, we address DHS's position that a family court is required to confirm that a parent is indigent prior to appointing counsel.  Based on the applicable authority, particularly In re L.I., DHS's position is incorrect. In re L.I., is instructive because, although it was issued in 2021, it dealt with a case initiated in the family court in June 2014, and is relevant to whether a court must decide indigency before counsel is appointed.

In In re L.I., this court, and subsequently the Hawaiʻi Supreme Court, addressed a factually similar scenario to the instant case, wherein a family court appointed counsel for a mother three months after her eldest child was placed in foster care.  149 Hawaiʻi at 120, 482 P.3d at 1081.  Several years later, the family court terminated mother's parental rights.  Id. On appeal, mother argued that the family court's three-month delay in appointing her counsel violated In re T.M.  Id.

This court acknowledged the family court's error, but declined to overturn the termination of mother's parental rights noting, among other things, that mother's early departure from court the day her child was placed into foster custody, and her inconsistent responses to instructions to complete the paperwork necessary to establish indigency, contributed to the delay in her

---

[6]  Although DHS's motion seeking to assert custody of the Children was made verbally at the hearing, and not in a written filing, we conclude that In re T.M. would apply at that time.  The analysis in In re T.M. is concerned with when a parent's liberty interest in the care, custody and control of their child is at stake.  131 Hawaiʻi at 421, 433-36, 319 P.3d at 340, 352-55. As demonstrated in this case, a verbal motion for foster custody can result in an immediate order granting the motion.

appointment of counsel.  In re L.I., No. CAAP-18-0000773, 2020 WL 1679419, at *3 (Haw. App. April 6, 2020) (SDO), vacated, 149 Hawaiʻi 118, 482 P.3d 1079 (2021).

As noted above, the Hawaiʻi Supreme Court vacated this court's decision.  In re L.I., 149 Hawaiʻi at 123, 482 P.3d at 1084.  In doing so, the supreme court clarified that "In re T.M. mandated that family courts appoint counsel for indigent parents when DHS files a petition asserting custody over a child[,]" and the court further held that "family courts must appoint counsel for indigent parents when DHS files a petition for family supervision[.]"  Id. at 122, 482 P.3d at 1083 (emphasis added).

The Hawaiʻi Supreme Court re-emphasized its rationale underlying In re T.M., namely, that parental rights are substantially affected upon the filing of a petition asserting custody over a child, and that mandating appointment of counsel once DHS initiates action for custody removes the vagaries of a case-by-case approach.  In re L.I., 149 Hawaiʻi at 122, 482 P.3d at 1083.

In In re L.I., the supreme court also noted it had explained in In re T.M. that "indigent criminal defendants have a right to an attorney whenever they are threatened by imprisonment, even if imprisonment is not subsequently imposed[,]" and that "attempting to determine in advance of the proceedings whether legal representation would ultimately be required is an exercise in futility.  The safeguard for parental rights thus rests on the appointment of counsel at the beginning of proceedings[.]"  Id. at 122 n.5, 482 P.3d at 1083 n.5 (emphasis added) (quoting In re T.M., 131 Hawaiʻi at 435 n.23, 319 P.3d at 354 n.23).

The Hawaiʻi Supreme Court did not specifically address the question of when a family court is required to determine indigency for purposes of appointing counsel in a termination of parental rights proceeding, which the court recognized as a right under article I, section 5 of the Hawaiʻi Constitution.  However, In re L.I. constructively forecloses DHS's argument in this case,

that a family court must determine indigency before appointing counsel.  First, In re L.I. holds that counsel must be appointed when DHS **files** a petition for family supervision or for custody, and also noted that to safeguard parental rights the appointment should be at the beginning of the proceedings.  Id. at 122, 122 n.5, 482 P.3d at 1083, 1083 n.5.  Further, in In re L.I., the supreme court rejected this court's rationale for not vacating the family court orders, which was that the mother's "early departure from the courtroom on January 13, 2015, her failure to provide DHS a specific street address for her new residence, and her inconsistent responses to voicemail messages and instructions for completing the paperwork necessary to establish her indigency all contributed greatly to the delay."  Id. at 121, 482 P.3d at 1082 (emphasis added) (footnote omitted).  In short, the supreme court focused on DHS's filing of a petition as the trigger for the family court's obligation to appoint counsel; not the family court's determination of indigency.[7]

Applying In re T.M. and In re L.I. here, we hold that: (1) the Family Court was not required to determine indigency prior to appointing counsel for Mother; and (2) the Family Court's failure to appoint counsel for Mother for 144 days, between June 21, 2019 (when temporary foster custody was requested and granted) to November 12, 2019 (when counsel was appointed) was structural error which requires vacatur of orders affecting custody of the Children from June 21, 2019.  Id. at 123, 482 P.3d at 1084 ("Pursuant to the holding in In re T.M., the failure to appoint counsel is a structural error that requires vacatur of orders made after DHS's filing for foster custody").  Consistent with In re L.I., we must remand this case to the Family Court for further proceedings to consider the best interest of the Children.  Id.

_____

[7]  In re L.I. is silent about the possibility that a family court consider indigency of a parent after counsel is initially appointed to protect the parent's rights.

We decline to address the parties' remaining arguments.

### III. Conclusion

For the foregoing reasons, we vacate the orders revoking foster custody and granting permanent custody of FP and AP to DHS, entered on September 26, 2022, in the Family Court of the Second Circuit in FC-S Nos. 19-1-0083 and FC-S 19-1-0084, respectively.  We also vacate orders affecting custody of the Children issued from June 21, 2019.  This case is remanded to the Family Court for further proceedings consistent with this Memorandum Opinion and considering the best interests of the Children.

DATED:  Honolulu, Hawaiʻi, September 19, 2023.


On the briefs:

Matthew Mannisto,
for Mother-Appellant

Terence Y. Herndon,
Julio C. Herrera,
Patrick A. Pascual,
Abigail S. Dunn Apana,
Deputy Attorneys General,
for Petitioner-Appellee

Nicole Forelli,
Guardian Ad Litem

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge