909 P.2d 590

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Michael Alan CHAR, Defendant–Appellant.**

**No. 18279.**

Intermediate Court of Appeals of Hawai'i.

Dec. 20, 1995.

Richard T. Pafundi, on the brief, Honolulu, for defendant-appellant.

James H.S. Choi, Deputy Prosecuting Attorney, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

Defendant Mark A. Char (Char) appeals from the district court's January 26, 1994 judgment convicting him of the offenses of (1) Harassment, Hawai'i Revised Statutes (HRS) § 711–1106(b) (1993); and (2) Criminal Contempt of Court, HRS § 710–1077(1)(g) (1993).

Char argues that the trial court (1) violated his constitutional right to court-appointed counsel when it denied his request for appointment of his fifth court-appointed counsel; (2) reversibly erred when it restricted his cross-examination of the complaining witness; (3) reversibly erred when it concluded that the evidence was sufficient to support the convictions; and (4) was not authorized, as part of the sentence, to order him to surrender his firearms to the police. We disagree with (4). However, because we agree with (1), we vacate and remand without deciding (2) and (3).

## I. FACTS

In 1992, in the district court, Char filed a Petition for Injunction Against Harassment against William A. Pundyke, Sr. (Pundyke). On March 27, 1992, pursuant to the agreement of Char and Pundyke, the district court entered an order (March 27, 1992 Protective Order) restraining and enjoining both Char and Pundyke from contacting, telephoning, threatening, or physically harassing the other and/or any person(s) residing at the other's residence and from entering and/or visiting the other's residential and employment premises, including the yard and garage. The March 27, 1992 Protective Order was effective for a period of three years.

On December 30, 1992, Pundyke and Jose Acoili (Acoili) saw Char come home, park his car, pick up some garbage on the outside of his property along his fence, and throw it into Pundyke's yard. They saw Char go back onto his property, pick up more garbage, and throw the garbage onto Pundyke's garage roof.

During his arraignment on January 20, 1993, Char requested an attorney and was referred to the Public Defender's Office. A conflict barred the Public Defender's Office from representing Char.

On April 7, 1993, Char's first court-appointed attorney, Wayne Tashima (Tashima), sought a continuance.

On July 12, 1993, the day scheduled for trial, Tashima moved to withdraw as counsel because the attorney-client relationship had deteriorated to the extent that he could not effectively represent Char. The court granted the motion. The court stated "that in the future I'm not going to allow attorneys to withdraw on the date of trial. If your relationship has deteriorated you have to file a motion ahead of trial."

On September 8, 1993, Char's second court-appointed attorney, Jonathan Leeds (Leeds), moved to withdraw as counsel because the attorney-client relationship had evolved to the point where communication was "severely hindered." Char did not object and requested another attorney. The court granted Leeds' motion to withdraw.

On October 27, 1993, Char appeared in court. His third court-appointed counsel, Steven Cedillos, was absent. The following colloquy took place:

THE COURT: All right. What do you want to tell me?

MR. CHAR: Uh, two weeks ago I called . . . .

THE COURT: I don't want to hear the merits of the case now. Okay?

MR. CHAR: Right. Right. Two weeks ago I called, I've been talking not with Steven Cedillos personally but his paralegal and I requested that since he lied to me previously I requested that two weeks ago for them to withdraw as my attorney because I didn't trust them anymore. They denied it. Then I told them that last week I had a court case and they supposed to represent me. She said she didn't know anything about it.

Last week I went to court; they didn't show up again; the judge . . .

THE COURT: No, what's the bottom line you're trying to tell me? What's the bottom line?

MR. CHAR: They're not trustworthy. I don't want them as my attorney because they did not . . . . This is the second time they did not appear in court to represent me.

THE COURT: Very well. You want an attorney in these cases?

MR. CHAR: Yes. This is a conflict case.

The court granted Char's request as follows:

THE COURT: Very well, Mr. Char. I'm going to refer you to the Public Defender's Office. They're going to conflict out; they will appoint you another attorney. That will be the last. Do you read me?

MR. CHAR: Yes.

THE COURT: We can't go through the whole Bar Association just to satisfy you.

MR. CHAR: What if, uh, it's their mistake? What if they're wrong?

\* \* \* \* \* \*

THE COURT: You're not entitled to have the whole Bar Association to be appointed for you. You've had three already. This is the last! Read me?

MR. CHAR: Yes.

On December 15, 1993, Char requested a jury trial. The trial court informed Char that because the contempt charge was being treated by the court as a petty misdemeanor, Char was not entitled to a jury trial. *State v. Wilson*, 75 Haw. 68, 73, 856 P.2d 1240, 1243 (1993); *State v. Shak*, 51 Haw. 612, 466 P.2d 422 (1970).

Char then requested a substitute for his fourth court-appointed counsel, Loralyn Cramer (Cramer). Cramer then moved to withdraw. The following colloquy occurred:

THE COURT: Withdrawal of counsel? You don't want her as your attorney?

MR. CHAR: No.

THE COURT: Why not?

MR. CHAR: Conflict.

THE COURT: What kind of conflict?

MR. CHAR: What I requested she didn't want to uh, get for me. For my defense.

THE COURT: Well, she's your attorney. She knows more than you do about the law.

\* \* \* \* \* \*

THE COURT: ... We've appointed attorneys for you. We cannot continue appointing attorneys for you, Mr. Char. Either you go with Miss Cramer today or without Miss Cramer. It's up to you, Mr. Char.

MR. CHAR: Like I said, I wanted to prove to the Court it was not my fault.

\* \* \* \* \* \*

MR. CHAR: She refused to get, uh, documents that I had requested, you know, for my defense ....

THE COURT: Okay. But the issue, the issue is as to whether or not you're going to go with Miss Cramer as your attorney today or nt. [sic]

MR. CHAR: Like I said, there's a conflict with her so I feel that ....

THE COURT: All right. Miss Cramer, your motion to withdraw is granted. You may .... I'm going to ask you to stand by as stand-by counsel. In case you want to ask her questions you may do so but as far as I'm concerned you have given up your right to counsel, Mr. Char. This is the fourth attorney we've appointed for you. We will not continue appointing attorneys for you. We will go to trial this afternoon. All right. Is this case ready to go to trial?

[DEPUTY PROSECUTOR]: Yes, Your Honor. At this time the State would be motioning the Court for a ten day mental evaluation of Mr. Char.

THE COURT: Mr. Char, the prosecutor has moved to have you evaluated mentally because it appears to me that there may be something wrong with you mentally.

MR. CHAR: Fine, if you folks feel that way. No problem.

THE COURT: My inclination is to go with the trial, Mr. Char. I think, I think you know what you're doing.

MR. CHAR: Well, like I said, I won't have a fair trial.

THE COURT: Well, that's what you think. I assure you you'll get a fair trial.

MR. CHAR: I'm entitled to an attorney, so ....

THE COURT: All right, Mr. Char. Mr. Char, have a seat. We'll get to your case. Thank you very much.

MS. CRAMER: Maybe if I just let you do it. He's basically saying he does need an attorney in this matter.

MR. CHAR: Right. Right. And I'm entitled . . . .

THE COURT: I don't think so. Mr. Char has given up his right to an attorney.

MR. CHAR: I have not given up. I'm asking the Court for a new attorney.

THE COURT: I have taken the position that you have given up your right to an attorney and the reason for it is that this is the fourth attorney we have appointed for you, Mr. Char.

During the trial, Char cross-examined Pundyke in relevant part as follows:

MR. CHAR: Okay. You had filed a complaint charging me with terroristic threatening against your son?

MR. PUNDYKE: Yes.

  *   *   *   *   *   *

STATE: Your honor, we'll object to the relevance.

  *   *   *   *   *   *

THE COURT: [T]he objection has been raised and the objection is sustained. We're talking about this incident, Mr. Char. Keep to this incident.

MR. CHAR: Well, Your Honor, the reason I was bringing this up is because I was granted a motion for nolle prosequi on these charges. The charges of . . . .

THE COURT: So what has [sic] those charges have to do with this case here, Mr. Char?

MR. CHAR: Uh, to show that he filed a false police report.

THE COURT: It's irrelevant.

At Char's sentencing hearing on January 26, 1994, the prosecutor advised the court of Char's ownership of some firearms and requested the court to order Char to surrender them.

The district court sentenced Char as follows:

THE COURT: Mr. Char, my opinion about you is that you are a very sick person and, uh, not only are you sick, I think you are prone to violence, Mr. Char, and I'm really concerned about Mr. Pundyke and the people that live around your neighborhood.

The problem is if I throw you in jail for sixty days, and that's what I'm inclined to do—throw you in jail for sixty days, that you'll come out an even angrier person and I'm not certain whether or not we're addressing the problem that is involved and the problem, I think, is your severe mental problem. You have a real problem, Mr. Char, and I think that problem should be addressed somehow or other. Now we can do it while you are in jail, we can have you go see a psychiatrist for some kind of treatment or some kind of program for your problem, Mr. Char. Or what I could do is have you go voluntarily and make it a condition of probation that you go and see a psychiatrist and you remain on that program until clinically discharged, Mr. Char.

I think you're headed toward something really violent and it's not only going to affect you, it's going to affect the victim and it's going to affect your family. I saw your two childre[n]; I saw your wife and if you continue doing what you're doing, Mr. Char, you're going to bring hardship and sadness to all of the people that are concerned and. have some relationship with you. And that's what you're doing. You're not only doing it to yourself. You're doing it to your neighbors. You're doing it to your family, your children. Now the court system is involved. I think it's all because of your mental problem. You really have one and I'm pretty sure that you don't recognize it and that, I think, is the root of the problem we have here. You don't recognize that you have a problem. Everybody else, apparently, seems to recognize that you have that problem.

You are a very angry person, Mr. Char. I'm not certain as to what we need to do. As I indicated I could throw you in jail for sixty days but that's the only hold I have over you and after sixty days you're going to be out and if you don't address the problem then what? It will get so bad one day you can't control yourself then you're going to hurt somebody badly and then what? What's going to happen to your family and your kids, Mr. Char? Don't you think about your family? Your kids?

Your wife? You're only thinking about yourself, Mr. Char.

For one thing, I'm going to order that the weapons in Mr. Char's possession be surrendered to the Police Department and I'm going to ask that the police go down there today to Mr. Char's house to pick up the [.]357 magnum as well as the [.]25 caliber automatic that Mr. Char owns and that's pursuant to the law with respect to the Restraining Order and that has been amended subsequently so at this time that [sic] Court is going to make that a condition of the stay away order if it's not already a condition of the stay away order.

\*     \*     \*     \*     \*     \*

THE COURT: . . .

And the next question is what do we do with you, Mr. Char? We can do it the easy way or we can do it the hard way. The easy way for me is to throw you in jail. And that's the hard way for you. Throw you in jail and while you're in jail make sure you address the problem that you have. We have some psyschiatrists [sic] that can work with you to address the problem, if you have one, Mr. Char, or, alternatively, the easy way for you is that you voluntarily attend programs that may be beneficial to you and the problem that you have, Mr. Char.

How do you want to handle it, Mr. Char? I'll leave it up to you? [sic]

MR. CHAR: Voluntary.

\*     \*     \*     \*     \*     \*

THE COURT: All right. What the Court is going to do at this time, the Court is going to sentence you to probation, terms and conditions of the probation are, and the probation is to be for six months in each case, to run consecutively, so you'll be on probation for one year, the terms and conditions are that you stay away and don't cause any trouble with your next door neighbor, you understand, Mr. Char? And that's pursuant to the restraining order that you have against you that is in force right now and this is going to be an additional restraining order the Court is going to order you to abide by and that's going to be part of the terms and conditions of the probation, Mr. Char. Do you understand that?

MR. CHAR: Uh huh.

THE COURT: In addition to that, the Court is going to order you to attend, uh, order you to submit to an appropriate mental health program to be designated by Counseling and Probation and you are to remain in that program until clinically discharged, you understand[?]

MR. CHAR: Uh huh.

## II. STANDARDS OF REVIEW

■ We review for abuse of discretion a lower court's denial of a motion to substitute new court-appointed counsel. *United States v. Roston,* 986 F.2d 1287 (9th Cir.1993) (citing *United States v. Torres,* 930 F.2d 1375, 1380 (9th Cir.1991)).

■ The applicable standard of review in sentencing matters is whether the court committed a plain and manifest abuse of discretion in its decision. *State v. Akana,* 10 Haw. App. 381, 384, 876 P.2d 1331, 1333 (1994) (citing *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 17 (1979)).

## III. DISCUSSION

### A. *Refusal to Appoint New Counsel*

■ Under the federal constitution, an indigent defendant charged with a crime for which imprisonment is authorized but not imposed has no right to the services of the public defender or court-appointed counsel. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). In Hawai'i, however, an indigent defendant charged with a crime for which imprisonment is authorized has a right to the services of the public defender or court-appointed counsel. Article I, § 14, Hawai'i State Constitution;[1] HRS § 802-1

---

1. Article I, § 14 of the Hawai'i State Constitution states in relevant part as follows: "The State

shall provide counsel for an indigent defendant

(1993).[2] *State v. Dowler*, 80 Haw. 246, 909 P.2d 574 (1995).

Char's case involves the limits of an indigent defendant's right to a replacement of court-appointed counsel. The Washington Supreme Court considered the issue of whether the trial court denied the defendant his constitutional right to counsel when it refused to appoint a third attorney and, instead, gave the defendant the option of proceeding to trial with the second court-appointed counsel or appearing *pro se*. The court held:

> Whether an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel is a matter within the discretion of the trial court. *State v. Sinclair*, 46 Wash.App. 433, 730 P.2d 742 (1986). When an indigent defendant fails to provide the court with legitimate reasons for the assignment of substitute counsel, the court may require the defendant to either continue with current appointed counsel or to represent himself. *Sinclair*, at 437–38, 730 P.2d at [744–45]. If the defendant chooses not to continue with appointed counsel, requiring such a defendant to proceed pro se [sic] does not violate the defendant's constitutional right to be represented by counsel, and may represent a valid waiver of that right. *State v. Staten*, 60 Wash.App. 163, 802 P.2d 1384 (1991).

*State v. DeWeese*, 117 Wash.2d 369, 816 P.2d 1, 4 (1991).

Similarly, the Colorado Court of Appeals held that

> [w]hen a defendant objects to court-appointed counsel, the trial court must inquire into the reasons for his dissatisfaction in order to determine whether good cause exists to substitute counsel. If the trial court's determination is that substitution is not warranted, defendant must be given a "clear choice" between present counsel and waiver of counsel. Such waiver is voluntary if defendant refuses, without good cause, to proceed with appointed counsel. *People v. Arguello*, [772 P.2d 87 (Colo.1989) ].

*People v. Haynie*, 826 P.2d 371, 374 (Colo. App.1991). Subject to one additional requirement, we agree with *DeWeese* and *Haynie*.

■ A "waiver" is the defendant's intentional and voluntary relinquishment of a known right. *United States v. Goldberg*, 67 F.3d 1092, 1098 (CA 3, 1995). In criminal cases, an indigent defendant is deemed to have waived by conduct, *id.* at 1100, his or her right to the services of the public defender or court-appointed counsel if the following six requirements are satisfied: (1) the defendant requested a substitute court-appointed counsel; (2) the defendant was afforded a reasonable opportunity to show good cause for a substitute court-appointed counsel; (3) the trial court did not abuse its discretion when it decided that a substitute court-appointed counsel was not warranted; (4) the requirements of *State v. Dickson*, 4 Haw. App. 614, 619–20, 673 P.2d 1036, 1041 (1983),[3] were satisfied; (5) the defendant was given a

charged with an offense punishable by imprisonment."

**2.** Hawai'i Revised Statutes (HRS) § 802–1 (1993) states as follows:

**Right to representation by public defender or other appointed counsel.** Any indigent person who is (1) arrested for, charged with or convicted of an offense or offenses punishable by confinement in jail or prison or for which such person may be or is subject to the provisions of chapter 571; or (2) threatened by confinement, against the indigent person's will, in any psychiatric or other mental institution or facility; or (3) the subject of a petition for involuntary outpatient treatment under chapter 334 shall be entitled to be represented by a public defender. If, however, conflicting interests exist, or if the public defender for any

other reason is unable to act, or if the interests of justice require, the court may appoint other counsel.

The appearance of the public defender in all judicial proceedings shall be subject to court approval.

The appearance of a public defender in all hearings before the Hawaii [Hawai'i] paroling authority or other administrative body or agency shall be subject to the approval of the chairperson of the Hawaii [Hawai'i] paroling authority or the administrative head of the body or agency involved.

**3.** The trial court should first examine the particular facts and circumstances relating to the defendant, such as the defendant's age, education, mental capacity, background and experience, and his conduct at the time of the

clear choice of either continuing with present counsel or being deemed to have waived by conduct his or her right to counsel; and (6) the defendant refused to continue with present counsel.

In Char's case, the answer to question (1) is yes. However, the answer to question (2) is no. Therefore, Char did not waive by conduct his right to counsel, and we do not reach questions (3), (4), (5), and (6).

### B. *Relinquishment of Firearms*

 Char contends that his harassment and contempt of court convictions did not authorize the district court, as part of the sentence, to order Char to relinquish his firearms. We agree. However, the combination of the March 27, 1992 Protective Order, the January 26, 1994 sentence, and HRS § 134–7(f) (1993) provided that authority. HRS § 134–7(f) states in pertinent part:

No person who has been restrained pursuant to an order of any court, . . ., from contacting, threatening, or physically abusing any person, shall possess or control any firearm or ammunition therefor, so

long as the protective order or any extension thereof is in effect[.]

HRS § 134–7(f)'s prohibition remains in effect for the period of the relevant restraining/protective order. In Char's case, although the March 27, 1992 Protective Order expired on March 26, 1995, the January 26, 1994 sentence extended the March 27, 1992 Protective Order for two consecutive six-month probation periods expiring on January 25, 1996.

## CONCLUSION

Accordingly, we vacate the district court's January 26, 1994 judgment convicting defendant Michael A. Char of Harassment and Criminal Contempt of Court and sentencing Char, *inter alia*, to surrender his "[.]357 magnum" and "[.]25 caliber automatic" weapons to the Police Department. We remand for a new trial.[4]

alleged waiver. This is necessary to allow the trial court to determine the level and depth to which its explanation and inquiry must extend.

Secondly, in order to fully assure that the defendant is informed of the risks of self-representation, the trial court should make him aware of the nature of the charge, the elements of the offense, the pleas and defenses available, the punishments which may be imposed, and all other facts essential to a broad understanding of the whole matter.

Finally, the trial court should inform the defendant: of his right to counsel, whether private or appointed; that self-representation is detrimental to himself; that he will be required to follow all technical rules and substantive, procedural, and evidentiary law; that the prosecution will be represented by able counsel; that a disruption of the trial could lead to vacation of the right to self-representation; and that if voluntary self-representation occurs, the defendant may not afterward claim that he had inadequate representation.

The trial judge is not required to give the defendant a short course in criminal law and procedure, since a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. However, the record should reflect some interchange on the above matters such as will indicate to a reviewing court that the

defendant knew and understood the dangers and disadvantages of self-representation.

Those matters, which we shall call here "specific waiver inquiry" factors, provide a guideline for the trial court in dealing with a demand for waiver of counsel. The record need not reflect a discussion between the court and a defendant illuminating every such factor. However, where the record fails to reflect that the trial court has sufficiently examined the defendant so as to establish that he is aware of the dangers and disadvantages of self-representation, or that the defendant has made a knowing and intelligent waiver, an appellate court will be hard-pressed to find that a defendant has effectively waived counsel. In such situations, the conviction of a *pro se* criminal defendant is vulnerable to reversal unless the record also contains overwhelming circumstantial evidence indicating that the requirements for a knowing and intelligent waiver have otherwise been met.

*State v. Dickson*, 4 Haw.App. 614, 619–21, 673 P.2d 1036, 1041 (1983) (citations and footnote omitted).

4. On remand, we recommend that the district court address the questions whether, in light of the trial judge's remarks quoted above, HRS § 704–403 (physical or mental disease, disorder, or defect excluding fitness to proceed), and/or

HRS § 704–400 (1993) (physical or mental dis-
ease, disorder, or defect excluding penal respon-
sibility) are applicable in this case. If the

Harassment charge is retried, appropriate con-
sideration must be given to *State v. Taliferro,* 77
Hawai'i 196, 881 P.2d 1264 (App.1994).