***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-16-0000474
13-JUN-2019
08:56 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

CHRIS GRINDLING, Respondent/Petitioner-Appellee,

vs.

STATE OF HAWAI'I, Petitioner/Respondent-Appellant.

SCWC-16-0000474

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000474; S.P.P. NO. 12-1-0007(3); CR. NO. 07-1-0533(2))

JUNE 13, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

In this case, Christopher Grindling brought a petition for post-conviction relief contending that the trial court violated his constitutional right to have each element of an offense proven beyond a reasonable doubt, when the court accepted a stipulation to elements of the charged offenses without engaging him in a colloquy to obtain his consent. Grindling also argued that he received ineffective assistance of

trial and appellate counsel relating to the trial court's error in accepting the stipulation. The circuit court granted Grindling's petition, concluding that the trial court's failure to conduct a colloquy with Grindling was plain error and that Grindling had received ineffective assistance both at trial and on appeal.

On appeal, the Intermediate Court of Appeals (ICA) held that plain error review was improper in a post-conviction proceeding. The ICA vacated the circuit court decision and remanded the case to afford Grindling's trial and appellate counsel an opportunity to address the ineffective assistance claims.

On review, we reaffirm that it is the duty of the trial court to conduct a colloquy with the defendant to obtain a knowing and voluntary waiver of the constitutional right to have each element of the charged offenses proven beyond a reasonable doubt; therefore, a court's failure to comply with this duty is not grounds for finding ineffective assistance of trial counsel. We further hold that plain error review applies to post-conviction proceedings, and the circuit court correctly noticed plain error in this case. We therefore vacate the ICA's judgment on appeal and affirm the circuit court decision on this ground.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Background

After law enforcement recovered suspected methamphetamine and drug paraphernalia from his residence and vehicle while executing two search warrants, Christopher Grindling was charged on August 31, 2007 with promoting a dangerous drug in the third degree in violation of § 712-1243(1) (1993)[1] of the Hawaii Revised Statutes (HRS) and prohibited acts related to drug paraphernalia in violation of HRS § 329-43.5(a) (1993).[2]

In September 2007, Grindling appeared for arraignment in the Circuit Court of the Second Circuit (trial court or circuit court as specified[3]) and entered pleas of not guilty.  In the months that followed, Grindling filed numerous pro se motions, including a motion to dismiss his counsel, Cary Virtue,

_____

[1]    HRS § 712-1243(1) provides in relevant part that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

[2]    HRS § 329-43.5(a) stated in relevant part,

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.

[3]    In this opinion, "trial court" refers to the court that presided over the trial and remand proceedings in Grindling's case, and "circuit court" refers to the court that presided over the post-conviction proceedings.

Esq., which was denied, and a subsequent motion to waive counsel.[4]

At a hearing in March 2008, Grindling clarified that he did not really want to waive counsel but did not wish to be represented by Virtue. After the court determined that Grindling had not made a showing that justified appointing replacement counsel, the trial court granted Grindling's motion to waive counsel and appointed Virtue as standby counsel. At a later hearing, the court reconsidered its determination, discharged Virtue, and appointed substitute counsel. In June 2008, substitute counsel moved to withdraw, and the trial court appointed Steven Songstad, Esq., as counsel and indicated that Songstad would be Grindling's last court-appointed counsel.

Jury trial commenced on August 4, 2008. During trial, the State informed the court that the parties had entered into a stipulation establishing the chain of custody and receipt into evidence of four packets and a pipe recovered in the search of Grindling's residence and vehicle, and that the results of chemical testing of the packets' contents and the pipe residue identified the presence of methamphetamine. The trial court did

---

[4] The Honorable Shackley F. Raffetto presided over the trial and remand proceedings.

not address Grindling regarding the stipulation, and the State read the stipulation to the jury.

The jury convicted Grindling on both charges, and the court sentenced Grindling to five years in prison on each count, with the terms to run consecutively (judgment of conviction). Grindling was also required to pay a $105 Crime Victim Compensation fee in each count.

### B.  Appeal

Cynthia Kagiwada, Esq., replaced Songstad as Grindling's counsel on appeal after Songstad moved to withdraw as counsel.  After the filing of the opening brief in the Intermediate Court of Appeals (ICA), Grindling filed a pro se pleading entitled "Ex Parte Objection to Court Appointed Counsel," and later, a supplement to the opening brief.[5]  Neither the opening brief nor Grindling's supplement to the opening brief raised any points of error concerning the trial court's acceptance of the evidentiary stipulation.

Thereafter, the ICA granted a motion by Kagiwada to remand the case to the trial court for consideration of a motion to withdraw as counsel.  During the remand hearing, the trial court allowed Kagiwada to withdraw from representing Grindling.

---

[5]     The State filed an ex parte motion to strike the supplement to opening brief, which the ICA granted over Grindling's opposition.

The court then entered into a discussion with Grindling regarding his lack of counsel.  Grindling stated that he wanted a lawyer but expressed his frustration with his previous court-appointed attorneys.  This led to the following exchange:

> THE COURT: All right.  Well, what do you want to do about a lawyer, you gonna represent yourself or what?
>
> THE DEFENDANT: I want an attorney, but I don't want [] another one that does nothing, therefore I have no choice but to represent myself.
>
> THE COURT: That's--if you--
>
> THE DEFENDANT: I am forced into it due [to] the fact that these attorneys don't want to do anything.
>
> . . . .
>
> THE COURT: . . . You know, we've had these discussions several times about what a bad idea that is; you remember all that?
>
> THE DEFENDANT: And yeah, and I agree with you.  It is a bad idea, but I am forced into it. . . .
>
> . . . .
>
> THE COURT: I just want to know quite clearly that you--you want to represent yourself.  If that is what you want to do, then that's fine.  I just want to make sure that you are clear about that.
>
> THE DEFENDANT: Yeah. I--I--I--we are clear about that.  Like I said, I--I have no choice. . . .

The trial court at this point determined Grindling had waived his right to appointed counsel "based on [his] collective behavior with [his] five previous counsel" and that he would represent himself on appeal.[6]

---

[6]    Grindling, pro se, filed a motion to effectively reinstate his supplement to the opening Brief, which the ICA granted.  The State filed a supplemental answering brief to which Grindling filed a reply.

On March 19, 2010, the ICA issued a Summary Disposition Order (SDO) in which it determined that the trial court should have held an evidentiary hearing to establish Grindling's objections on the record to ascertain the bases for his request for replacement of Virtue as his trial counsel.[7] The ICA also concluded that although Grindling moved to waive his right to counsel, "he really wanted substitute counsel." The ICA found, however, that these errors were harmless beyond a reasonable doubt because Grindling was without counsel for only about one week, approximately four months before trial began. Accordingly, the ICA affirmed the judgment of conviction.

### C.   HRPP Rule 40 Proceedings

On April 4, 2012, Grindling filed a "Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner From Custody" (Petition[8]) in the circuit court pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40, alleging that he had not been given access to correctional programs, which resulted in his being denied parole.[9]

---

[7]     The ICA's SDO can be found at State v. Grindling, No. 29307, 2010 WL 1020355 (App. Mar. 19, 2010).

[8]     The Petition was amended and supplemented with additional claims. The term "Petition" refers collectively to these supplemental filings as well.

[9]     HRPP Rule 40(a) provides in relevant part:

(continued . . .)

Grindling later filed amendments to the Petition in May 2012, alleging eight grounds. The circuit court issued an order, finding that Grindling's Petition raised potentially colorable claims that had not been waived or previously ruled upon with regard to, inter alia, his assertions of ineffective assistance of appellate counsel and denial of counsel on appeal.[10]

In 2016, Grindling, now represented by counsel, filed a motion to supplement the Petition, which the circuit court granted. The supplemental ground asserted that Grindling's state and federal constitutional rights to a fair trial were violated when the circuit court, prior to accepting the stipulation, failed to conduct an on-the-record colloquy with him regarding his waiver of the right to proof of an element of a charge. Grindling also contended that that his federal and

---

(. . . continued)

> (a) Proceedings and Grounds. The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction . . . .

The Honorable Joseph E. Cardoza presided over the Rule 40 proceedings.

[10] In May 2014, Grindling filed an amended petition, pro se, in which he raised six grounds, several of which reiterated claims that the circuit court had previously found colorable.

state constitutional rights to effective assistance of trial and appellate counsel were violated by his trial counsel's inaction and appellate counsel's failure to raise the trial court's error on appeal.

In response to the claims raised in the supplemental ground, the State argued that Grindling waived these claims when he represented himself pro se on direct appeal, engaged in conduct that demonstrated his desire to reject counsel, and failed to raise the issue in a separate HRPP Rule 40 petition that he had filed in 2015 (2015 Petition), which had been assigned to a different circuit court judge and denied.

At a hearing held on the Petition, the State conceded that the trial court erred when it did not enter into a colloquy with Grindling with regard to the stipulation, but the State argued that the trial court's omission was not plain error. The circuit court disagreed, finding that the stipulation "established proof of an element to the offenses charged, i.e. the presence of methamphetamine," and concluding that the trial court's failure to conduct the colloquy was plain error. In addition, the circuit court found that Grindling was denied his constitutional right to the effective assistance of trial counsel when Songstad did not request a colloquy or object to the trial court's omission, as well as his constitutional right to the effective assistance of appellate counsel when Kagiwada

9

failed to raise the trial court's error on appeal. On June 14, 2016, the circuit court issued "Findings of Fact, Conclusions of Law, and Order Granting Supplemental Ground to Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody" (Order Granting Petition) and ordered that a new trial be held. The State timely appealed.

### D.    ICA Proceedings

Before the ICA, the State argued that Grindling could have raised the supplemental claims on direct appeal or in the 2015 Petition and thus those claims were waived. The State also contended that Grindling should be judicially estopped from raising a claim based on ineffective assistance of appellate counsel because he represented himself on direct appeal and that the circuit court applied the wrong standard with respect to Grindling's ineffective assistance of counsel claims.

The ICA issued an SDO on April 5, 2018.[11] The ICA held that the circuit court did not err in ruling that there was no waiver of Grindling's supplemental claims, pointing to the circuit court's unchallenged finding that Grindling "has consistently requested the assistance of counsel" through all stages of this case. However, the ICA concluded that the

---

[11]    The ICA's SDO can be found at Grindling v. State, No. CAAP-16-0000474, 2018 WL 1633820 (App. April 5, 2018).

10

"circuit court's application of a plain error standard of review to Grindling's collateral attack on his conviction was improper." Quoting United States v. Frady, 456 U.S. 152 (1982), the ICA noted that there is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal," and held that the circuit court therefore should only have applied the standard for ineffective assistance of trial and appellate counsel. (Quoting 456 U.S. at 164-66.)

The ICA thus ruled that the circuit court erred by applying a plain error standard of review to Grindling's "collateral attack on his convictions" rather than the standard for ineffective assistance of trial and appellate counsel. And, because the record did not indicate that Songstad or Kagiwada had an opportunity to address Grindling's claim that they were constitutionally ineffective as required by HRPP Rule 40(f),[12]

---

[12]    HRPP Rule 40(f) states in relevant part as follows:

Where the petition alleges the ineffective assistance of counsel as a ground upon which the requested relief should be granted, the petitioner shall serve written notice of the hearing upon the counsel whose assistance is alleged to have been ineffective and said counsel shall have an opportunity to be heard.

the ICA vacated the circuit court's Order Granting Petition and remanded the case to the circuit court for further proceedings.[13]

## II. STANDARDS OF REVIEW

We consider a court's conclusions of law regarding a petition for post-conviction relief de novo, including its determination of whether a claim is waived under HRPP Rule 40(a)(3). Fragiao v. State, 95 Hawai'i 9, 15, 18 P.3d 871, 877 (2001). A court's findings of fact in connection with a petition for post-conviction relief are reviewable under the clearly erroneous standard. Wilton v. State, 116 Hawai'i 106, 110 n.7, 170 P.3d 357, 361 n.7 (2007).

## III. DISCUSSION

In its application for writ of certiorari, the State contends that the ICA gravely erred when it upheld the circuit court's determination that Grindling did not waive his supplemental claims in the Petition.[14]

---

[13] The State also maintained on appeal that the circuit court erroneously allowed Grindling to re-litigate and obtain discovery, inter alia, on previously ruled upon claims. The ICA did not address the merits of this challenge.

[14] The State also argues that the circuit court erred when it disregarded its argument regarding Grindling's re-litigation of his discovery claims. The State maintains that upon remand, Grindling will continue to attempt to re-litigate pre-trial discovery issues that have been previously ruled upon. Accordingly, the State requests that this Court provide guidance on this point.

**A. Grindling Did Not Waive His Right to Counsel by Conduct Because He Was Not Presented with a Clear Choice to Continue with Present Counsel.**

Waiver in a HRPP Rule 40 proceeding is governed by HRPP Rule 40(a)(3), which provides that "an issue is waived if the petitioner knowingly and understandingly failed to raise it," when it could have been raised previously, unless the petitioner is able to show the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.[15]  There is a rebuttable presumption that a petitioner's failure to appeal a ruling or to raise a potential issue in a prior proceeding is a knowing and understanding failure.  HRPP Rule 40(a)(3).

The State argues that both the circuit court and the ICA erred in concluding that Grindling did not waive his supplemental claims when they were not raised in the supplement

---

[15]     HRPP Rule 40(a)(3) provides as follows:

(3) INAPPLICABILITY.  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

to his opening brief on direct appeal.  The State points to the trial court's determination on remand that Grindling had waived his right to appellate counsel "based on [his] collective behavior with [his] five previous counsel."

This court has long held that a defendant's waiver of the right to counsel must be voluntarily, knowingly, and intelligently made.  See State v. Tarumoto, 62 Haw. 298, 300, 614 P.2d 397, 399 (1980).  "[A]lthough a waiver must be knowing and intentional, it 'may be expressed or implied,' meaning 'it may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred.'"  In re Contested Case Hearing on Water Use Permit Application Originally Filed by Kukui (Molokai), Inc., 143 Hawai'i 434, 441, 431 P.3d 807, 814 (2018), (quoting Coon v. City & Cty. of Honolulu, 98 Hawai'i 233, 261, 47 P.3d 348, 376 (2002)).  With regard to a waiver of the right to counsel by conduct, a "[w]aiver may be shown by conduct of an unequivocal nature."  Tarumoto, 62 Haw. at 300, 614 P.2d at 399.

In State v. Char, the ICA considered the circumstances under which a defendant may waive the right to counsel by repeatedly rejecting court-appointed representation.  80 Hawai'i 262, 264, 909 P.2d 590, 592 (App. 1995).  Upon granting the defendant's fourth request for substitute counsel, the trial

court cautioned the defendant that this would be his last court-appointed attorney. Id. at 265, 909 P.2d at 593. Subsequently, the defendant again requested substitute counsel, prompting the court to grant counsel's motion to withdraw and determine that the defendant had waived his right to counsel. Id. The defendant represented himself at trial and, following his conviction, appealed to the ICA, arguing that his right to court-appointed counsel had been violated. Id. at 264-66, 909 P.2d at 592-94.

The ICA held that to determine whether a defendant had validly waived his right to counsel by conduct, six-factors had to be satisfied:

> (1) the defendant requested a substitute court-appointed counsel; (2) the defendant was afforded a reasonable opportunity to show good cause for a substitute court-appointed counsel; (3) the trial court did not abuse its discretion when it decided that a substitute court-appointed counsel was not warranted; (4) the requirements of State v. Dickson, 4 Haw. App. 614, 619-20, 673 P.2d 1036, 1041 (1983)[16], were satisfied; (5) the defendant was given a clear choice of either continuing with present counsel or being deemed to have waived by conduct his or her right to counsel; and (6) the defendant refused to continue with present counsel.

Id. at 268-69, 909 P.2d at 596-97 (internal references omitted).

The ICA concluded in Char that the lower court's failure to give

---

[16] "Dickson set forth three areas of 'specific waiver inquiry' factors to assist trial courts: (1) the particular facts and circumstances relating to the defendant that indicate the defendant's level of comprehension; (2) the defendant's awareness of the risks of self-representation; and (3) the defendant's awareness of the disadvantages of self-representation." State v. Phua, 135 Hawai'i 504, 512, 353 P.3d 1046, 1054 (2015).

the defendant a reasonable opportunity to show good cause for a substitute court-appointed counsel was sufficient to find that the defendant had not validly waived his right to counsel through his conduct.[17] Id. The ICA thus vacated the defendant's conviction and ordered a new trial. Id. at 269, 909 P.2d at 597.

Factor (5) of the Char framework requires that the court give the defendant a "clear choice" of either (1) continuing with present counsel or (2) being deemed to have waived the right to counsel by conduct. In this case, the trial court allowed Kagiwada to withdraw as appellate counsel before addressing Grindling about what "he was going to do about a lawyer," ultimately concluding that Grindling wanted to represent himself and that he had waived counsel by his "collective behavior with [his] five previous counsel." Because the trial court allowed Kagiwada to withdraw as counsel before addressing Grindling, he was not given a "clear choice" between continuing with his present counsel or being deemed to have waived by conduct his right to counsel as required by factor (5) of the Char framework.

---

[17]     Because the ICA concluded that factor (2) had not been met, the ICA did not discuss factors (3) through (6). See Char, 80 Hawai'i at 269, 909 P.2d at 597. We do not address whether satisfaction of the six factors identified by the ICA would necessarily result in a valid waiver of counsel.

Further, the record does not establish that Grindling unequivocally waived his right to counsel. During Grindling's interaction with the trial court on remand, Grindling expressly stated that he still wanted a lawyer but that he had no choice but to represent himself. He agreed that it was a bad idea to represent himself but that he was "forced into it." When asked to clarify whether he wanted to represent himself, Grindling again stated that he "ha[d] no choice."

Grindling's conduct did not constitute a valid waiver of his right to appellate counsel, and he was thus denied his right to counsel on appeal. Grindling therefore could not "knowingly and understandably fail[] to raise" the circuit court's failure to engage him in the required Murray colloquy[18] or the claim of ineffective assistance of trial counsel on direct appeal.[19]

---

[18] As discussed infra, Section III.D, this court held in Murray that "the trial court must conduct a colloquy [with the defendant] regarding waiver of proof of an element of the offense." State v. Murray, 116 Hawai'i 3, 12, 169 P.3d 955, 964 (2007).

[19] Grindling is therefore also not judicially estopped from claiming ineffective assistance of appellate counsel because of the flawed nature of the purported waiver of counsel. The State alternatively argues that the supplemental claims are waived because Grindling could have raised them in the 2015 Petition. HRPP Rule 40(a)(3) states that claims may be waived if they are not brought "in a prior proceeding actually initiated under this rule." (Emphasis added.) The filing of the Petition predated the filing of the 2015 Petition. Therefore, Grindling's failure to include the supplemental claims in the 2015 Petition did not constitute a waiver under HRRP Rule 40(a)(3).

### B. The Merits of Grindling's Ineffective Assistance of Trial Counsel Claim.

The circuit court concluded that Grindling was denied his constitutional right to the effective assistance of trial counsel when his counsel did not request an on-the-record colloquy by the trial court and did not object to the trial court's failure to conduct a colloquy before the stipulation to elements of the charged offenses was accepted. In addressing the State's challenge to this ruling, the ICA concluded that it did not appear that Songstad had an opportunity to address Grindling's claim of ineffective assistance of counsel at the hearing on the Petition and remanded the case to the circuit court to afford such an opportunity.

To demonstrate that trial counsel is constitutionally ineffective, a defendant must demonstrate "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Silva, 75 Hawai'i 419, 440, 864 P.2d 583, 593 (1993) (quoting State v. Aplaca, 74 Haw. 54, 66-67, 837 P.2d 1298, 1305 (1993)). Thus, to succeed on the claim of ineffective assistance of trial counsel, Grindling is initially required to show that Songstad's failure to bring the colloquy requirement to the trial court's attention

was an omission reflecting a lack of skill, judgment, or diligence.

Our precedents make clear, however, that it is the duty of the <u>trial court</u> to conduct a colloquy to ensure a defendant's waiver of a fundamental right is undertaken knowingly, intelligently, and voluntarily--and not that of defense counsel.  In <u>State v. Murray</u>--which set forth the mandatory colloquy requirement to a defendant's stipulation to an element of a charged offense--we stated that

> a knowing and voluntary waiver of a defendant's fundamental right must come directly from the defendant, and <u>requires the court to engage in a colloquy with the defendant</u>. . . .
>
> . . . .
>
> <u>Tachibana</u> determined that <u>the trial court must engage in an on-the-record colloquy</u> to ensure that the defendant knowingly and voluntarily waived his constitutional right . . . .

116 Hawai'i 3, 11, 169 P.3d 955, 963 (2007) (emphases added) (citing <u>State v. Ibuos</u>, 75 Hawai'i 118, 121, 857 P.2d 576, 578 (1993); <u>Tachibana v. State</u>, 79 Hawai'i 226, 235, 900 P.2d 1293, 1302 (1995)).  Similarly, in <u>State v. Ui</u>, we noted that "it is necessary for a trial court to engage a defendant in an on-the-record colloquy before accepting a waiver of any of the rights we have held to be fundamental."  142 Hawai'i 287, 293, 418 P.3d 628, 634 (2018).

The failure of defense counsel to realize that a court neglected to fulfill its constitutional duty to conduct a

19

colloquy as to a stipulation to an element of a charged offense, or to take action to correct the court's oversight, or to request a colloquy as a matter of due course are not omissions reflecting counsel's lack of skill, judgment, or diligence. We thus need not consider whether any such omission by the defense counsel would result in the withdrawal or substantial impairment of a potentially meritorious defense.

In sum, a trial court's constitutional duty to engage the defendant in a colloquy prior to accepting a stipulation to an element of a charged offense does not devolve upon defense counsel when the court does not fulfill its responsibility.[20] Accordingly, Grindling's claim for relief based on the ineffectiveness of trial counsel is without merit. Thus, the ICA erred in remanding the case to the circuit court to allow Songstad an opportunity to address Grindling's claim of ineffective assistance of trial counsel.[21]

_____

[20] Nevertheless, a prosecutor or defense counsel may certainly assist the court by reminding it of the required colloquy or pointing out an omission when it occurs.

[21] The ICA's SDO also instructed the circuit court to allow Kagiwada the opportunity to address Grindling's claim of ineffective assistance of appellate counsel with regard to the failure to raise the trial court's error on appeal. As discussed infra, the circuit court correctly concluded that the trial court's failure to engage in a colloquy with Grindling was plain error and ordered that Grindling receive a new trial. Because a new trial renders moot Grindling's ineffective assistance of appellate counsel claim, which was based on an appeal of the original trial court decision, we need not address the merits of Grindling's ineffective assistance of appellate counsel claim or the ICA's disposition thereof. See State v. Cordeiro, 99 Hawaiʻi 390, 428, 56 P.3d 692, 730 (2002) (noting that "a decision on other

(continued . . .)

## C. The Availability of Plain Error on Collateral Review.

The ICA held that the HRPP Rule 52(b) plain error standard is unavailable on collateral review, citing United States v. Frady, 456 U.S. 152, 164-66 (1982).[22]  In Frady, the U.S. Supreme Court considered the application of the Federal Rules of Criminal Procedure (FRCP) Rule 52(b)--which authorizes federal courts to notice plain error in criminal proceedings--in a collateral review proceeding authorized by a federal statute, 28 U.S.C. § 2255.  456 U.S. at 163-64.  The section 2255 proceeding was not directly governed by the FRCP, but rather by the section 2255 Rules, a set of federal procedural rules promulgated for that specific purpose.  See id. at 166 n.15. The Court reasoned that FRCP Rule 52(b) plain error review was not available in a section 2255 proceeding because under its precedents there existed a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly

---

(. . . continued)

issues in the appellate court may effectively moot an ineffective assistance claim" (quoting State v. Silva, 75 Haw. 419, 438, 864 P.2d 583, 592 (1993))). We accordingly vacate the portion of the circuit court's Order Granting Petition as to Grindling's ineffective assistance of appellate counsel claim.

[22]    The circuit court vacated the conviction both on grounds of ineffective assistance of counsel and plain error.  We therefore consider whether the court's ruling may be affirmed based upon its alternative plain error ruling.  State v. Pacquing, 139 Hawai'i 302, 313 n.19, 389 P.3d 897, 908 n.19 (2016) ("[W]here the decision below is correct it must be affirmed by the appellate court even though the lower tribunal gave the wrong reason for its action."  (quoting State v. Taniguchi, 72 Haw. 235, 239, 815 P.2d 24, 26 (1991)).

higher hurdle than would exist on direct appeal." Id. at 166. Instead, a petitioner was required to meet the "cause and actual prejudice" standard to obtain relief in a section 2255 proceeding based on an unobjected-to error, which requires a showing of "both (1) 'cause' excusing [the] double procedural default, and (2) 'actual prejudice' resulting from the errors of which he [or she] complains." Id. at 167.

Relying on Frady, the ICA in this case held that the supplemental claims should be governed exclusively by the standards for ineffective assistance of trial and appellate counsel and not the HRPP Rule 52(b) plain error standard.[23] This analysis is flawed for several reasons.

First, unlike in Frady, the collateral review in this case was not authorized by a statute but instead by HRPP Rule 40. This court has not promulgated a separate set of procedural rules for post-conviction proceedings analogous to the section 2255 Rules, and it is self-evident that the HRPP--including HRPP Rule 52(b)--apply in a HRPP Rule 40 proceeding.

Second, the Court's decision in Frady was predicated on the "cause and actual prejudice" standard of review being a

---

[23] HRPP Rule 52(b) provides as follows:

Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

22

"significantly higher hurdle than" the plain error standard of review. Frady, 457 U.S. at 166. In contrast, the legal standard for identifying ineffective assistance of counsel is not a higher standard of review than plain error--indeed, it is not a standard of review at all. Rather, the test for ineffective assistance is applied in the first instance by a reviewing court. A court considering whether ineffective assistance occurred does not consider the rulings or actions of the trial court but rather the conduct of counsel. And, to the extent the two standards are comparable, plain error represents the "higher hurdle" because it requires a proponent to demonstrate an impairment of "substantial rights." HRPP Rule 52(b). When evaluating a claim for ineffective assistance, we consider "the possible, rather than the probable, effect" of counsel's error and "no showing of 'actual' prejudice is required." Wilton v. State, 116 Hawai'i 106, 119, 170 P.3d 357, 370 (2007) (quoting Briones v. State, 74 Haw. 442, 464, 848 P.2d 966, 977 (1993)). Thus, the central logic underlying the United States Supreme Court's holding in Frady is inapplicable to the ineffective assistance standard.

Lastly, this court has implicitly rejected Frady repeatedly in the years since it was decided, by considering-- and in some instances applying--the plain error standard in the context of collateral review. See, e.g., Raines v. State, 79

23

Hawai'i 219, 224-25, 900 P.2d 1286, 1291-92 (1995) (applying plain error in a post-conviction proceeding based on incorrect jury instruction); Dan v. State, 76 Hawai'i 423, 429, 879 P.2d 528, 534 (1994) (considering the merits of defendant's plain error argument in a post-conviction proceeding); Briones, 74 Haw. at 460, 467 n.18, 848 P.2d at 975, 978 n.18 (noting the availability of post-conviction plain error review when an error on appeal does not satisfy the standard for ineffective assistance of appellate counsel). The ICA therefore erred in concluding that plain error was not the proper standard of review.

## D. The Circuit Court's Plain Error Conclusion Was Correct.

We now turn to whether the circuit court's application of plain error in this case was proper. The relevant inquiry in determining whether a lower court's plain error may be noticed is whether the error affected substantial rights. State v. Hernandez, 143 Hawai'i 501, 512, 431 P.3d 1274, 1285 (2018). As this court made clear in State v. Murray, "[t]he defendant's right to have each element of an offense proven beyond a reasonable doubt is a constitutionally and statutorily protected right." 116 Hawai'i 3, 10, 169 P.3d 955, 962 (2007) (internal references omitted). A knowing and voluntary waiver of such a right must come from the defendant and requires the court to

engage in a colloquy with the defendant.  Id. at 11, 169 P.3d at 963.  "[A] reviewing court has discretion to correct plain error when the error is 'not harmless beyond a reasonable doubt.'" State v. Ui, 142 Hawaiʻi 287, 297, 418 P.3d 628, 638 (2018) (quoting State v. Nichols, 111 Hawaiʻi 327, 335, 141 P.3d 974, 982 (2006)).

Grindling was charged with promoting a dangerous drug in the third degree in violation of HRS § 712-1243(1) and prohibited acts related to drug paraphernalia in violation of HRS § 329-43.5(a).  At trial, the court accepted the stipulation establishing the chain of custody of several packets and a pipe received into evidence and the results of chemical testing of the evidence, which found the presence of methamphetamine.  As the circuit court correctly found, the stipulation "established proof of an element to the offenses charged, i.e. the presence of methamphetamine."  The trial court thus erred by not first conducting an on-the-record colloquy with Grindling to obtain a waiver of his right to have each element of the offenses against him proven beyond a reasonable doubt.  See Murray, 116 Hawaiʻi at 14, 169 P.3d at 966 (holding that the family court committed plain error when it, inter alia, accepted a stipulation without engaging the defendant in a colloquy regarding waiving proof of an element of the charge).  Without the results confirming the

25

presence of methamphetamine in this case, the jury could not have found Grindling guilty of the charged crimes and the trial court's error was therefore not harmless.  See Ui, 142 Hawai'i at 298, 418 P.3d at 639 (holding that the "erroneously admitted stipulation formed the only basis from which a trier of fact could infer" the defendant's specific blood alcohol content exceeded the legal limit in a prosecution for operating a vehicle under the influence of an intoxicant and concluding that the district court's plain error was not harmless).

The circuit court correctly concluded that the trial court's failure to conduct an on-the-record colloquy with Grindling before accepting the stipulation establishing an element of the charged offenses was plain error.  Ui, 142 Hawai'i at 298, 418 P.3d at 639; Murray, 116 Hawai'i at 14, 169 P.3d at 966.  We thus affirm the circuit court's Order Granting Petition on plain error grounds.[24]

### IV.  CONCLUSION

Based on the foregoing, we vacate the ICA's May 2, 2018 Judgment on Appeal, vacate that portion of the circuit court's Order Granting Petition as to ineffective assistance of

---

[24]    The State requests that this court review the circuit court's orders compelling discovery related to Grindling's Petition.  The State does not allege any actual consequences of the discovery order in relation to this case.  Rather, the State asks only that this court "provide guidance," essentially requesting an advisory opinion.  We decline to do so.

trial and appellate counsel, and otherwise affirm the Order

Granting Petition.

Peter A. Hanano                 /s/ Mark E. Recktenwald
for petitioner
                                /s/ Paula A. Nakayama

                                /s/ Sabrina S. McKenna

                                /s/ Richard W. Pollack

                                /s/ Michael D. Wilson

